IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTOINE RIGGINS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 18-4429 |
| | : | |
| SUPERINTENDENT MCGINLEY, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                 **March 29, 2022**

Petitioner Antoine Riggins seeks collateral review of his state court conviction for the first-degree murder of Terrell Pough, robbery, carrying a firearm without a license, criminal conspiracy, theft, possession of an instrument of crime, and receiving stolen property. In his habeas corpus petition, Riggins seeks habeas relief on two grounds: (1) ineffective assistance of counsel for his attorney's alleged failure to object to Sixth Amendment violations; and (2) violation of the Fourteenth Amendment for the alleged failure of the trial court to declare a mistrial following an outburst from the victim's mother.

United States Magistrate Judge David R. Strawbridge issued a Report and Recommendation (R&R) recommending denial and dismissal of Riggins's petition because: (1) the Sixth Amendment *Bruton* violation was harmless under *Brecht* and did not have such a "substantial and injurious" effect on the jury's verdict to justify a grant of the writ; (2) under *Carey*, the Superior Court was reasonable in holding an appropriate instruction and individual colloquies cured any prejudice against Riggins at trial; and, relatedly (3) the Pennsylvania Superior Court's decision was not based on an unreasonable finding of fact.

Riggins objects to the R&R, asserting the Magistrate Judge: (1) employed an improper harmless error prejudice standard; (2) erred in recommending Riggins had not demonstrated prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984); and (3) incorrectly applied a higher

burden to the portion of Riggins's claim arising under §2254(d)(2). Riggins also objects to the denial of a certificate of appealability. After *de novo* review, the Court agrees with Magistrate Judge Strawbridge—Riggins's ineffective assistance of counsel claims and due process claims both must be denied. Accordingly, Riggins's objections are overruled, the R&R is modified to reflect the correct standard under 2254(d)(2) and approved and adopted in all other respects.

**BACKGROUND**

On November 17, 2005, Terrell Pough went to work at a restaurant in Germantown and closed the restaurant with his co-worker, Ronald Davis, around 10 p.m. He was shot shortly thereafter while standing by his car outside of his apartment complex. According to their testimony, at the time of the shooting, both Pough's coworker Ronald Davis and Pough's neighbor, Eugene Birden, saw men outside of Pough's apartment complex. Birden testified he heard a gunshot, and later saw a body lying in front of the building. *Commonwealth v. Riggins*, No. 3314 EDA 2008 ("*Riggins 1*"), slip op. at 5-7 (Pa. Super. Ct. June 7, 2010) (citing Tr. Ct. Op. at 2-5 (Mar. 14, 2009)).

According to Amoy Archer's testimony, Riggins came to her home that night and told her he had shot Pough, who owed him money for drugs and had been avoiding him. *Id.* Archer also testified Riggins gave her a revolver, and later picked her up in a white car with Saul Rosario, Riggins' co-defendant, and Riggins told her the car was Pough's. *Id.* In her testimony, Darlene Taylor stated Riggins had confessed he had shot the victim in the back of the head over a drug debt. Taylor also testified Riggins and his mother asked her to lie and provide an alibi for him.

Riggins and Rosario were apprehended by the police soon after, and both signed written confessions in front of detectives. Riggins filed a motion to suppress his confession, but the motion was denied on February 23, 2007. As a result of Riggins's suppression hearing, the trial court replaced any and all references in Riggins's confession to Rosario with the phrase "my friend." Three days later, Rosario's motion to suppress was also denied. In Rosario's confession, any

reference to Riggins was replaced with the phrase "the guy." These changes were intended to avoid a Confrontation Clause violation under *Bruton v. United States*, 391 U.S. 123 (1968), and neither Riggins nor Rosario filed a motion to sever their trials based on these concerns.

Riggins and Rosario were charged with murder, along with other crimes, associated with Pough's death. They were tried jointly from February 28, 2007 to March 6, 2007, in the Philadelphia Court of Common Pleas. The entirety of Rosario's confession, with the redaction replacing references to Riggins as "the guy", was introduced by the Commonwealth. After the entry of the confession on the record, the Commonwealth and Rosario's attorney (Attorney McDermott) made direct and obvious references to Riggins as "the guy" in Rosario's statement.

Riggins's own confession was also read into the record twice, once with the agreed-upon redaction (referencing Rosario as "my friend") and once without redaction after Riggins took the stand. Detective Williams testified:

> she and Detective Ismail Cruz . . . interviewed Riggins on November 30, 2005. In his signed statement, Riggins told the detectives that he shot the victim once in the back of the head with a .357 revolver, as the victim was opening the door to his apartment on the evening of November 17, 2005. Riggins told detectives he shot the victim because he was owed money for crack cocaine.

*Commonwealth v. Riggins*, No. 3314 EDA 2008 ("*Riggins I*"), slip op. at 5-7 (Pa. Super. Ct. June 7, 2010) (citing Tr. Ct. Op. at 2-5 (Mar. 14, 2009)). During Riggins's testimony, the victim's mother interrupted him from the gallery, and had an emotional outburst accusing Riggins. The outburst was heard by the jury. After deliberation, the jury found Riggins guilty of first-degree murder and other related offenses. Riggins was sentenced on May 15, 2007.

Riggins appealed directly to the Pennsylvania Superior Court, and challenged: (1) the sufficiency of the evidence; (2) the trial court's refusal to grant a motion *in limine* regarding the "irrelevant and harmful" testimony of a lay witness; and (3) the trial court's refusal to declare a

3

mistrial after the victim's mother's outburst. *See Riggins 1* at 4. The Superior Court affirmed on June 7, 2010, and the Pennsylvania Supreme Court declined to allow the appeal on April 26, 2011.

One year later, on October 23, 2012, Riggins filed a timely pro se PCRA petition which raised numerous claims of ineffective assistance of counsel, including the failure to object to *Bruton* violations. On November 22, 2013, the trial court dismissed the petition without a hearing. On appeal, the Pennsylvania Superior Court affirmed the dismissal of his PCRA petition on March 29, 2018, and the Pennsylvania Supreme Court denied allowance of appeal six months later.

On October 15, 2018, Riggins filed a timely pro se petition for writ of habeas corpus, asserting seven grounds for relief. After retaining counsel, Riggins submitted a revised petition which reduced the petition to only two grounds for relief *See* Doc. 2; Doc. 21. Respondents filed their response in opposition on December 18, 2019, and Riggins filed his reply brief on February 1, 2020. *See* Doc. 25; Doc. 29-1. Riggins also filed a Notice of Supplemental Authority regarding *Johnson* on February 10, 2020. Doc. 30.

Magistrate Judge Strawbridge issued his Report & Recommendation on January 4, 2022. Doc. 38. Riggins requested a sixty day extension of time to file objections, which the Court granted. On March 20, 2022, Riggins filed his objections which the court now reviews *de novo.* Doc. 41.

**DISCUSSION**

This Court is required to make a *de novo* review upon the record of those portions of the R&R to which specific objections have been made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C); *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). "District Courts, however, are not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28 U.S.C. § 636(b)." *Hill v. Barnacle*, 655 F. App'x. 142, 147 (3d Cir. 2016). The "court may accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1)(C).

4

Riggins asserts the R&R applies the wrong standard. In particular, Riggins takes issue with the statement: "[t]here must be **more than a reasonable possibility that the error was harmful,"  insofar as "the defendant was actually prejudiced by the error**." Doc. 38 at 17 (quoting *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015))(emphasis in the original). Riggins views this as a higher standard than the one traditionally imposed under *Strickland* and *Brecht*, which are "essentially the same standard." *Breakiron v. Horn*, 642 F.3d 126, 147 (3d Cir. 2011); Doc. 41 at 8 (where Riggins states: "the *Brecht* harmless error standard and the *Strickland* prejudice 'are essentially the same standard.'") (citations omitted). However, in *Johnson v. Superintendent*, the Third Circuit stated "*Brecht* requires a finding of "actual prejudice," which is "more than a reasonable possibility the error was harmful." 18-2423 (3d Cir. Feb 7, 2020) (*slip opinion*) (citing *Davis v. Ayala*, 135 S. Ct. 2187, 2197-98 (2016)).This interpretation of *Brecht*  is identical to the standard in the R&R Riggins seeks to challenge.

Additionally, after considering all of the evidence, Judge Strawbridge actually applied the *Strickland* standard. Doc. 38 at 23 ("In sum, Riggins is unable to show that the *Bruton* violation he suffered at trial was so "substantial and injurious" that it could be considered harmful error. *See Fogg*, 414 F. App'x at 427. Accordingly, under *Strickland*, we cannot accept that he was prejudiced by his counsel's representation, when we see no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."")

Next, Riggins asserts he has demonstrated *Strickland* prejudice. This lacks merit. After reviewing *de novo*, the Court finds the R&R correctly determined both (1) the record did support a finding of a *Bruton* violation, and (2) the record did not support a finding of prejudice. In his objection, Riggins spends four pages detailing the alleged "impeachment," "purchase," or "contradiction" of the testimony of Amoy Archer and Autumn Parker, evidence regarding Petitioner's gym bag, and Riggins's confession, all of which were asserted in the initial counseled

5

habeas brief. *See* Doc. 41, at 9-12. Riggins raises these points in an effort to prove he "has challenged every piece of evidence and testimony presented against him" and asserts "the Magistrate did not actually assess the credibility of the bulk of the other evidence," instead focusing on what was termed the "unchallenged" testimony of the rebuttal witness, Taylor. Doc. 41 at 14.

As Riggins articulates, "*Johnson* stands for the proposition that the harm caused by a *Bruton* violation should be judged against the credibility of the remaining evidence." Doc. 41 at 14. Judge Strawbridge did exactly that. Judge Strawbridge *explicitly* considered: (1) Riggins's own confession (and correctly found it could be considered); (2) Archer's Testimony; (3) Parker's Testimony; (4) Taylor's Testimony; (5) Birden and Davis's eyewitness testimony; (6) the confirmation from the medical examiner and police regarding Pough's cause of death and the matching of the bullet with the type of weapon used; (7) the presence of Riggins's gym bag in the victim's stolen car; and (8) Riggins's subsequent absence from school.

Riggins takes issue with the most explicit portion of Judge Strawbridge's credibility analysis being done "in a footnote." Doc. 41 at 14. Some of the analysis taking place in a lengthy footnote in no way undermines its validity or the extent of its consideration.

Riggins also notes "the Magistrate was incorrect that Petitioner did not challenge Taylor's testimony. . ." Doc. 41 at 15. Riggins misunderstands Judge Strawbridge's point. When Judge Strawbridge wrote "[t]he testimony of Taylor, however, remains unchallenged by Riggins," Judge Strawbridge was noting how Riggins did not undermine Taylor's testimony in his Counseled Brief in Support of Habeas Petition. Doc. 38 at 17. And, while Riggin's own testimony did contradict Taylor's, this does not mean Taylor's testimony has been sufficiently "impeached," as the jury was free to disbelieve some or all of what Riggins said at trial.

Additionally, Riggins would have this Court call into question Taylor's testimony because, when asked if she had been threatened with perjury if she didn't come to Court, she said she was

6

told "if I *lied* I would be charged with perjury." Doc. 41 at 13; NT 3/5/2007, 185-186 (emphasis added). This statement is true—someone who lies on the stand can be, and often is, charged with perjury. Taylor was not "threatened with perjury to inculpate Petitioner." Doc. 41 at 15.[1]

Riggins also claims Judge Strawbridge ignored how "the evidence against Riggins is undermined by the 'testimony of a disinterested witness who said he saw three men, not two, with hoods at the time he heard a shot.'" Doc. 41 at 16. Judge Strawbridge *did* comment on this evidence, stating "Birden, who had seen the victim with two men outside of the victim's home, heard the gunshot, and then discovered the victim's body," (Doc. 38 at 23) and cited to the same portion of the trial transcript as Riggins does. N.T. Feb. 28, 2007 . 82-101, 183-190.

Riggins's dispute of evidence during his own testimony does not *de facto* meet the *Strickland* standard. Considering the credibility of all of the evidence and testimony in the record, Riggins cannot show the *Bruton* violation he suffered at trial was so "substantial and injurious" it could be considered harmful error, and there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Fogg*, 414 F. App'x at 427. Riggins's objections are denied and the portion of his habeas petition which rests on the *Bruton* violation is appropriately dismissed.

Riggins's third objection asserts the Magistrate Judge incorrectly applied a clear and convincing burden to Riggins's §2254(d)(2) claim. Riggins is correct. The appropriate standard is not "clear and convincing evidence." As the Third Circuit has noted:

> The Supreme Court has "explicitly left open the question whether [28 U.S.C.] § 2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2)." *Wood v. Allen*, 558 U.S. 290 (2010) (citation omitted). In the absence of Supreme Court guidance, we have explained that § 2254(e)(1) applies to a

---

[1] The court reminds Riggins's counsel he is an officer of the court, and it is inappropriate to continue to imply a witness was threatened into testifying by the prosecution, without more evidence than a legally accurate representation of perjury. There is a difference between zealous advocacy and blatant misrepresentation.

7

> state court's subsidiary factual findings, and that a challenge under that section may be "based wholly or in part on evidence outside the state trial record." *Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004) (citations omitted). We have also indicated that § 2254(d)(2) applies to a state court's ultimate factual findings, and that a challenge under that section is based on "the totality of the evidence presented in the state-court proceeding." Id. (quotation omitted).

*Eley v. Erickson*, 712 F.3d 837, 846 at fn. 11 (3d Cir. 2013). Because the challenge here is rooted in a 2254(d)(2) claim, a reasonableness standard of review applies. However, changing the standard from "clear and convincing" to "reasonableness" does not change the outcome.

All of the *Riggins 1* findings which Riggins challenges are reasonable. He first alleges "*Riggins 1* [] inaccurately noted that only Jurors 1 and 9 expressed safety concerns" and cites to page 16 of *Riggins 1* for the "unreasonable" statement. Doc. 41 at 21. This is an oversimplified summary of the *Riggins 1* statement. After the outburst, the trial Judge "questioned each juror individually to determine whether she could disregard the outburst and whether he or she had any personal safety concerns . . ." *Riggins 1* at 16. *Riggins 1* states "[e]ach juror indicated that he or she could disregard the outburst, **while only Juror Number One and Juror Number Nine discussed any safety issues**. Specifically, Juror Number One commented that he and other jurors did not know what to do as "she was like, you know, jumping over the bench or something . . ." *Riggins 1* at 16 (emphasis added).

Read in the context of the one-on-one conversations between each juror and the Judge, the statement "only Juror Number One and Juror Number Nine discussed any safety issues" is not unreasonable—it actually matches the narrative Riggins himself puts forth in his objections. Only Juror Number One and Juror Number 9 *discussed* or raised safety issues during their one-on-one conversations with the judge and, as acknowledged by the subsequent sentence, Juror Number One mentioned the concerns of other jurors.

8

Riggins also alleges *Riggins 1* was unreasonable when it "noted Juror number 9's concerns, [and yet] affirmed, without any explanation, the trial court's conclusion that the jury felt safe and could disregard the outburst. Yet, Juror 9's concerns were not addressed." Doc. 41, at p. 21.  As Judge Strawbridge discussed, Juror 9's concerns were indeed addressed by the trial court. Doc.  38 at  35-36; N.T. Mar. 2, 2007, 177. This was the conversation between Juror Number Nine and the Judge:

> The Court: Do you have any—as a result of what you observed, do you have any security or safety issues that I should be made aware of?
>
> The Juror [Number Nine]: No, not really. I was just wondering if – if they come in the courtroom with a gun or something like that.
>
> The Court: Well, first of all, let me assure you that that is not a possibility. Everyone who comes into the building is thoroughly searched, and in addition to which I will – if it will make you feel better, I will have additional security in the courtroom.
>
> The Juror: No. I realize that. I thought about the detectives downstairs and all.
>
> The Court: Okay. So, that was your only issue?
>
> The Juror: Yeah.

(N.T. Mar. 2, 2007, p. 177.)  Juror Number 9's concerns were clearly addressed, as reflected in the above segment of the transcript, which is cited directly in *Riggins 1*. As such, the *Riggins 1* Court was not unreasonable in finding the trial court was confident the jurors could disregard the interruption and felt safe. *See Riggins 1* at 17.[2]

Riggins also argues the *Riggins 1* Court was "improperly and overly concerned with which jurors sat through the verdict," and "although Juror 1 expressed safety concerns, the court noted that this juror did not sit through deliberations because of a previously scheduled medical procedure."

---

[2] The Court notes Riggins raised another point which is cut off due to scrivener's error. As such, the court will not address how *Riggins 1* did not "address the fact that Juror 10—who was somewhat equivocal in response to the safety questions — rode the train with the victim's family, . . ."

9

Doc. 41 at 21; *Riggins 1*, at 16, n. 10. However, a short one sentence explanation does not constitute improper concern. Read in context, the *Riggins 1* Court was merely noting the juror most vocal about safety concerns did not actually participate in the deliberation due to an appointment, and thus his concerns would not impact *his* deliberation This too is not unreasonable.

Lastly, Riggins objects to the denial of a certificate of appealability. Under 28 U.S.C. § 2253 and Federal Rule of Appellate Procedure Rule 22(b), an applicant seeking a COA must make a "substantial showing of the denial of a constitutional right," *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) as the purpose of the COA is to "prevent frivolous appeals." *Barefoot v. Estelle,* 463 U.S. 880, 894 (1983). The standard, as Judge Strawbridge articulated, is whether "jurists of reason would find it to be debatable whether the petition states a valid claim for the denial of a constitutional right." Doc. 38 at pp. 37-38; *Miller-El v. Cockrell*, 537 U.S. 322 (2003). For all of the reasons expressed herein, the Court agrees with Judge Strawbridge—a reasonable jurist would not find error in the dismissal of the present petition. The request for a COA is denied.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.